**CHICAGO BANK OF COMMERCE et al. v.
CARTER, and three other cases.**

Nos. 9434, 9493, 9435, 9494, 9497, 9531.

Circuit Court of Appeals, Eighth Circuit.

Nov. 17, 1932.

Rehearing Denied Dec. 15, 1932.

the state of Oklahoma, and the Cherokee Public Service Company, a corporation, incorporated under the laws of the state of Delaware, were, by separate orders, adjudged bankrupt. The petitions on which these adjudications were entered are identical, except for the name of the corporation, and there accompanied each petition a copy of the minutes of a meeting of the board of directors of each company, held January 7, 1932, at Little Rock, Ark., the minutes reciting the insolvency of the corporation, its inability to meet its current demands, that it was being sued, and would soon find itself in the hands of a state receiver, that it was the unanimous opinion of the directors that it was necessary that the company be placed in federal bankruptcy, and the adoption of a resolution authorizing, empowering, and directing the president and secretary to take such steps as might be necessary to place the company and its affairs in the hands of the federal bankruptcy court.

After the adjudication, and on January 12 and 15, 1932, petitions were filed by appellants, challenging the jurisdiction of the court to enter the adjudications in bankruptcy, and seeking to vacate the orders of adjudication on the ground that neither corporation had had its principal place of business within the district of the adjudication for the greater portion of the six months next preceding, and that the officers filing the petitions had not been authorized by the board of directors, at a proper and lawful meeting, to file such petitions.

Each petition was denied, and, from the orders denying the petitions, separate appeals have been taken. These appeals have been consolidated in this court. In each case there are in fact two appeals, one allowed by the District Court and the other allowed by this court.

On these appeals, it is urged by appellants that the lower court was without jurisdiction to enter the adjudications in bankruptcy (1) because neither of said corporations had had their principal place of business within the district for the greater part of the six months next preceding the adjudication, and (2) because the officers of the corporation were without authority to file a voluntary petition in bankruptcy.

By section 11, title 11, USCA, courts of bankruptcy are vested with jurisdiction to "adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six

Elmer J. Lundy, of Tulsa, Okl. (Grover T. Owens and S. L. Ehrman, both of Little Rock, Ark., and J. R. Harmon, of Chicago, Ill., on the brief), for appellants.

J. A. Tellier, of Little Rock, Ark. (G. E. Garner, George A. McConnell, and Elmer Schoggen, all of Little Rock, Ark., on the brief), for appellees.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

On the 8th of January, 1932, in the District Court of the United States for the Eastern District of Arkansas, on voluntary petitions filed on that date, the Central Texas Ice Company, a corporation, incorporated under the laws of the state of Texas, the Natural Gas & Fuel Company, a corporation, incorporated under the laws of the state of Texas, the Municipal Gas Company of Muskogee, a corporation, incorporated under the laws of

988

months, or the greater portion thereof." Courts of bankruptcy, being of statutory origin, possess only such jurisdiction and powers as are expressly, or by necessary implication, conferred upon them by the Bankruptcy Act. Jones v. Kansas City Custom Garment Making Co. (C. C. A.) 1 F.(2d) 649; Nixon v. Michaels (C. C. A.) 38 F.(2d) 420, 423; Finn v. Carolina Portland Cement Co. (C. C. A.) 232 F. 815; In re Hollins et al. (C. C. A.) 229 F. 349.

As said by this court in Nixon v. Michaels, supra: "A District Court of the United States sitting as a court of bankruptcy is a court of limited jurisdiction. Limitations exist as to subject-matter; as to territory; as to the residence and occupation of the debtor to be adjudicated; as to the status of the corporation or person to be adjudicated; and as to other matters. Remington on Bankruptcy (3d Ed.) c. III. And consent cannot confer jurisdiction over subject-matter. The express provisions of the statute and the necessary implications are controlling."

The jurisdiction of the bankruptcy court must depend upon the existence as a fact of the residence, domicile, or principal place of business of the person to be adjudged bankrupt within the district of the court for the period of time required by statute. In considering the question of the court's jurisdiction, we may exclude any question of domicile or residence of these corporations because, confessedly, neither of them had a domicile or residence in the state of Arkansas, all being as to that state foreign corporations. If the court's jurisdiction is to be sustained, it must be upon the ground that these corporations had their principal places of business in the state of Arkansas for six months, or the greater portion thereof, immediately preceding the filing of the petitions.

It was alleged in the petitions to vacate the order of adjudication that they had not had such principal places of business within the territorial jurisdiction of the bankruptcy court. The appellees joined issue on this allegation, and the trial court, after hearing the testimony, found as to the Central Texas Ice Company as follows: "Testimony of witnesses was taken orally at the bar of the court and the cause was argued and the court having heard and fully considered all of said facts and pleas, and arguments, and being fully advised in the premises is of the opinion that the principal place of business of said Central Texas Ice Company was within the jurisdiction of this court for a period of six months immediately preceding the date of its said adjudication, and being of the opinion that the application and amended application should be overruled and dismissed."

A substantially identical finding was entered as to each corporation.

Every presumption is indulged in favor of the jurisdiction of the court once assumed, and there is, of course, a presumption in favor of the correctness of the finding of the lower court. As said by this court in Central Republic Bank & Trust Co. v. Caldwell et al., 58 F.(2d) 721, 734: "The rule in this court often announced is: 'Where the court below has considered a question and made a finding on conflicting evidence, its conclusion is presumptively correct, and it should not be disturbed unless it is reasonably clear that a serious mistake has been made in the consideration of the facts or an obvious error has intervened in the application of the law.' Dodge v. Norlin (C. C. A.) 133 F. 363, 371; Cleage v. Laidley, 149 F. 346, 353 (C. C. A. 8); Houchin Sales Co. v. Angert, 11 F.(2d) 115, 117 (C. C. A. 8), and cases cited; Parrish v. City Nat. Bank, 32 F.(2d) 982 (C. C. A. 8); Remington on Bankruptcy (3d Ed.) § 3871; see Quinn v. Union Nat. Bank, 32 F.(2d) 762 (C. C. A. 8)."

To the same effect see Coder v. Arts (C. C. A.) 152 F. 943, 15 L. R. A. (N. S.) 372, affirmed 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Moore v. Yampa Mercantile Co. (C. C. A.) 287 F. 629; In re Cannon (C. C. A.) 31 F.(2d) 388.

The question as to the place of business of a corporation is one of fact. Home Powder Co. v. Geis (C. C. A.) 204 F. 568, 572; In re Pusey & Jones Co. (C. C. A.) 286 F. 88; Continental Coal Corp. v. Roszelle Bros. (C. C. A.) 242 F. 243; Dryden v. Ranger Refining & Pipe Line Co. (C. C. A.) 280 F. 257, 262; In re Pennsylvania Consol. Coal Co. (D. C.) 163 F. 579.

This court in Home Powder Co. v. Geis, supra, referring to the place of business of a corporation, said: "It thus becomes a question of fact as to whether the mining company had its principal place of business in the Western district of Missouri for the greater portion of the six months next preceding August 27, 1910."

In Dryden v. Ranger Refining & Pipe Line Co., supra, the court said: "Where a corporation conducts its business at a number of places, no one of which is plainly the place where its business is principally conducted, one of such places, where a substantial business is transacted, and from which general

supervision of all of its business is exercised, may be properly held to be the principal place of business of such corporation."

In the course of the opinion in the above case, the court quoted with approval from In re Worcester Footwear Co. (D. C.) 251 F. 760, 761, as follows: "It is not easy, nor is it required, to lay down any general rule for determining which one of several places at which a corporation does business is its principal place of business."

The principal place of business of a corporation is to be determined by the facts, and not by the intentions of the parties, nor the recitals in the charter of the corporation. The principal place of business of a corporation for the purpose of jurisdiction in bankruptcy being a question of fact, neither its place of incorporation nor its charter is controlling. In re Pennsylvania Consol. Coal Co., supra.

It is the contention of the appellees that the question of the location of the principal place of business of these corporations being one of fact, the finding of the lower court based upon disputed evidence is conclusive, while the appellants, conceding that the question of where the principal place of business of a corporation may be is one of fact, contend that the meaning of the term "place of business" is one of law; and it is also the contention of the appellants that there is no substantial controversy as to the facts.

At the threshold of this controversy, we are met with the objection that the appellants, being creditors, could not maintain petitions to vacate the adjudication in bankruptcy on a voluntary petition. As a general rule, a general creditor has no such standing in a bankruptcy court as to entitle him to move to vacate an adjudication made in a voluntary proceeding. In re A. C. Wagy & Co. (C. C. A.) 22 F.(2d) 9, 11; In re Ann Arbor Mach. Corp. (C. C. A.) 274 F. 24; In re Ives (C. C. A.) 113 F. 911. In the instant case, however, the motions challenged the jurisdiction of the court, and any interested party may raise the question of jurisdiction, or the court on its own volition may determine the question. We think it is fairly well established, both on authority and principle, that a creditor may attack even an adjudication in a voluntary proceeding on the ground of either jurisdiction or fraud upon the court. Zeitinger v. Hargadine-McKittrick Dry Goods Company (C. C. A.) 244 F. 719; In re Garneau (C. C. A.) 127 F. 677, 680; In re Guanacevi Tunnel Co. (C. C. A.) 201 F.

316, 319; In re Elmira Steel Co. (D. C.) 109 F. 456; Vassar Foundry Co. v. Whiting Corp. (C. C. A.) 2 F.(2d) 240.

The question here involved clearly is one of jurisdiction over the subject-matter, and, if the court was without jurisdiction over the subject-matter, then it is not material how the question is brought to the court's attention. As said in In re Garneau, supra: " * * * It would be the duty of the court sua sponte, when it is led to suspect that its jurisdiction has been imposed upon, to inquire into the facts by some appropriate form of proceeding."

In Re Guanacevi Tunnel Co., supra, the court said: "This objection, being jurisdictional, may be made by a creditor."

We are therefore of the view that the appellants, as creditors, had the right to challenge the jurisdiction of the court to enter the orders of adjudication.

It is further urged that the motions to vacate the orders of adjudication and the orders entered thereon were proceedings in bankruptcy, as distinguished from controversies arising in bankruptcy proceedings. and hence these appeals do not present for review any questions of fact. It has been observed that a double appeal has been taken in each of these cases, one allowed by the lower court, and the other allowed by this court. The jurisdiction of this court to allow appeals in bankruptcy matters is limited to proceedings in bankruptcy, as distinguished from "controversies arising in bankruptcy." "Controversies arising in bankruptcy proceedings" embrace those matters arising in the course of a bankruptcy proceeding which are not mere steps in the administration of the estate, but which give rise to distinct and separable issues between the trustee and adverse claimants, concerning the right and title to the bankrupt's estate. These may be independent or plenary suits arising, by intervention or otherwise, between the trustee and claimants asserting some right or interest adverse to the bankrupt or his general creditors. "Proceedings in bankruptcy," on the other hand, as the term is used in title 11, § 47 (b), USCA, embrace matters of an administrative character, including administrative orders and decrees in the ordinary course of bankruptcy between the filing of the petition and the final settlement of the estate. Taylor v. Voss, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889; Broders v. Lage (C. C. A.) 25 F.(2d) 288; Quinn v. Gardner (C. C. A.) 28 F.(2d) 270; Central Republic Bank & Trust Co. v.

990

Caldwell (C. C. A.) 58 F.(2d) 721; In re Bell Motor Co. (C. C. A.) 45 F.(2d) 19; Morse & Tyson v. Irving-Pitt Mfg. Co. (C. C. A.) 18 F.(2d) 692; Schnurr v. Miller (C. C. A.) 49 F.(2d) 109.

The issue here is clearly one growing out of proceedings in bankruptcy, and the appeals were properly allowed by this court. The appeals allowed by the lower court should ordinarily be dismissed, but, by stipulation of the parties, they have been consolidated with the appeals allowed by this court, and hence need not be dismissed, though we may only consider the issues raised on the appeals allowed by this court. In re Webb (C. C. A.) 54 F.(2d) 1065.

 The importance of determining the nature of the controversy is the bearing the question has upon the scope of review on this appeal. Appeals involving proceedings in bankruptcy proper are now reviewable in the manner and form of appeal, but only questions of law may be considered; and it has been held that applications to vacate adjudications, or refusals to adjudicate, are appealable only on questions of law. Hunter, Walton & Co. v. J. G. Cherry Co. (C. C. A.) 247 F. 458, 460; In re Rosser (C. C. A.) 101 F. 562, 567; Brady et al. v. Bernard & Kittinger (C. C. A.) 170 F. 576, 579; In re New England Breeders' Club (C. C. A.) 169 F. 586; In re Community Finance Co. (C. C. A.) 295 F. 773; Banco Commercial De Puerto Rico v. Hunter Benn & Co. (C. C. A.) 31 F.(2d) 921, 923; Duryea Power Co. v. Sternbergh, 218 U. S. 299, 31 S. Ct. 25, 54 L. Ed. 1047; In re Stitt (C. C. A.) 252 F. 1; In re Stewart (C. C. A.) 179 F. 222; In re Ann Arbor Mach. Corp. (C. C. A.) 274 F. 24; In re Wood (C. C. A.) 248 F. 246; In re Hoyne (C. C. A.) 277 F. 668; Remington on Bankruptcy, vol. 8, §§ 3715 and 3764.

The jurisdiction of the bankruptcy court was dependent upon a question of fact, to wit, whether or not the corporations had had their principal place of business within the territorial jurisdiction of the court for the greater part of six months next preceding the adjudication. That question of fact was determined adversely to the appellants. Without here reviewing the testimony, we are clear that this finding of the court is abundantly sustained by substantial evidence.

In Hunter, Walton & Co. v. J. G. Cherry Co., supra, decided by this court, the question was whether the principal place of business of Gurler & Co. was at Cedar Rapids, Iowa, or De Kalb, Ill. The lower court, on application to vacate an order of adjudica-

tion, found as an ultimate fact that the principal place of business was at Cedar Rapids, Iowa. In the opinion it is said inter alia: "The petition to revise authorized by section 24b of the Bankruptcy Law is confined to matters of law. It cannot involve controverted questions of fact arising upon the evidence, or upon inferences to be drawn from the evidence. In re Lee, 182 F. 579, 105 C. C. A. 117; In re Frank, 182 F. 794, 105 C. C. A. 226; Hall v. Reynolds, 224 F. 103, 139 C. C. A. 659. The question whether the bankrupts had their principal place of business at Cedar Rapids is such a question. There was abundant evidence to support the decision of the trial court. This is true, not only of the direct testimony, but of the inferences properly to be drawn from all the evidence. It follows that the case presents no question which may properly be reached by a petition to revise. The petition is therefore dismissed."

And in In re Rosser, supra, this court said: "This is a petition for a revision of the proceedings of the district court under section 24, subd. b, of the bankrupt act, and under that subdivision the jurisdiction of the circuit courts of appeals is restricted to the consideration of matters of law, and does not embrace the review of questions of fact."

In Brady v. Bernard & Kittinger, supra, which involved an appeal from an order to set aside the adjudication of bankruptcy, decided by the Circuit Court of Appeals for the Sixth Circuit, the court said:

"The 'controversies arising in bankruptcy proceedings' referred to in this section, as has been heretofore held by this court, are 'those independent or plenary suits which concern the bankrupt's estate, and arise by intervention or otherwise between the trustee representing the bankrupt's estate and claimants asserting some right or interest adverse to the bankrupt or his general creditors,' and do not include 'administrative orders and decrees in the ordinary course of a bankruptcy between the filing of the petition and the final settlement of the estate,' which, under section 24b of the bankrupt act, are subject to revision by this court *in matter of law* upon petition for review." (Italics supplied.)

Again the court said, in answer to a contention on behalf of appellants, that the weight of the proof showed that the bankrupt did not have his principal place of business within the territorial jurisdiction of the bankruptcy court, and hence there was no jurisdiction of the cause in the court below, and for that reason the appellate court

should remand the proceedings to the lower court, with instructions to dismiss the entire proceedings: "It is, however, sufficient to say in answer to this contention that the rule which appellants seek to invoke, that an Appellate Court will remand a cause with instructions to dismiss whenever it appears from the record that there was no jurisdiction in the court below, has no application except where such want of jurisdiction affirmatively appears upon the face of the record, in a case otherwise properly before the Appellate Court, as in that of Mattingly v. Northwestern Virginia R. Company, 158 U. S. 53, 15 S. Ct. 725, 39 L. Ed. 894, and that the Appellate Court has no jurisdiction to so remand where the alleged want of jurisdiction in the court below is predicated upon an issue of fact adjudicated in the court below in favor of the jurisdiction, and where the order or judgment in which such adjudication was involved is not properly brought before the Appellate Court for review."

In Banco Commercial De Puerto Rico v. Hunter Benn & Co., supra, it is said that: "The review in this court under section 24b is limited to questions of law."

And in 8 Remington on Bankruptcy, at section 3764, it is said: "Thus applications to vacate adjudications or refusals to adjudicate are appealable only on questions of law."

The orders appealed from must therefore be affirmed, unless, as contended by appellants, they are void because the officers filing the same were not properly authorized so to do by proper action of the board of directors of the respective corporations.

█ It is not contended that the board of directors was without power to authorize the filing of voluntary petitions in bankruptcy, but the contention is narrowed to the question of the regularity of the meeting at which the directors undoubtedly authorized the officers to file such petitions. Where a corporation is insolvent in the sense that it is unable to meet its current obligations, the board of directors, unless inhibited from so doing by statute, charter, or by-law provisions, without any special authority from or vote of the stockholders, has the power to make a general assignment for the benefit of creditors, or to apply for receiver, or to file a petition in voluntary bankruptcy. In re Guanacevi Tunnel Co. (C. C. A.) 201 F. 316, 318; In re Ann Arbor Mach. Corp. (C. C. A.) 274 F. 24; In re Russell Co. (D. C.) 291 F. 809; In re Lone Star Shipbuilding Co. (C. C. A.) 6 F.(2d) 192; In re United Grocery Co. (D. C.) 239 F. 1016; In re De Camp Glass Casket Co. (C. C. A.) 272 F. 558; In re People's Warehouse Co. (D. C.) 273 F. 611; In re Marine Machine & Conveyor Co. (D. C.) 91 F. 630.

█ The appellants, as creditors, were not concerned with the regularity of the proceedings of the board of directors. A majority of the board of directors of each company was in attendance when the action was taken authorizing the filing of petitions in voluntary bankruptcy. A majority of the board had authority to pass such a resolution, binding upon the whole board and upon the corporation.

In In re Guanacevi Tunnel Co., supra, a creditor contended that an adjudication in bankruptcy was filed without authority. In the course of the opinion the court said: "The petitioner contends that the voluntary petition was filed without authority, because he alleges that the corporation is solvent (in the sense of the Bankrupt Law), and because only the majority of shareholders can, by the laws of Arizona, dissolve a corporation prior to the time fixed in the articles of incorporation. We will examine this contention, although we think it is one which a creditor has no standing to make in the case of a voluntary petition. * * * The voluntary petition for adjudication as a bankrupt is tantamount to such proceedings. The petition charges that the corporation is unable to meet its current obligations, which is commercial insolvency. The Bankruptcy Act itself permits any person who owes debts to file a petition to be adjudicated. 'Any qualified person may file a petition to be adjudged a voluntary bankrupt.' Section 59a."

Neither the nonparticipating directors, nor any one purporting to represent the corporations, or either of them, objected to the action of the directors, and the irregularity was not such as could be taken advantage of by the appellants as creditors. At the time the action was taken, substantially all the stock of all the corporations was represented in the person of the directors present and participating, and we conclude that the bankruptcy court acquired jurisdiction to enter orders of adjudication.

█ Another matter should perhaps be referred to, though not urged by either of the parties. So far as the Central Texas Ice Company and the Natural Gas & Fuel Company are concerned, it is observed that the receiver only seems to have been made a party to the proceedings in the lower court, and

the receiver only appears as appellee in this court. The receiver in bankruptcy proceedings is not the representative either of the creditors or of the bankrupt. As said by the Circuit Court of Appeals in In re A. C. Wagy & Co., supra: "It seems unnecessary to cite authorities to the proposition that in the proceeding in question the receivers were not the representatives either of the creditors or of the bankrupt, parties whose presence was absolutely essential to the determination of the question presented by the petition."

As to these companies, the lower court may well have denied appellants' applications to vacate the adjudication on this ground. Apparently, the necessary parties were not before the court.

We are of the view that the lower court was correct in denying the petitions of the appellants to vacate the orders of adjudication in bankruptcy, and the orders appealed from are therefore affirmed.